John Meyer, MT Bar # 11206
Cottonwood Environmental Law Center
P.O. Box 412
Bozeman, MT 59771
(406) 546-0149
john@cottonwoodlaw.org

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MONTANA - BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER; GALLATIN WILDLIFE ASSOCIATION,<br><br>*Plaintiffs,*<br>vs.<br><br>YELLOWSTONE MOUNTAIN CLUB, LLC; SPANISH PEAKS MOUNTAIN RESORT,<br><br>*Defendants.* | Case No. 2:21-cv-00093-BMM-JTJ<br><br>AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

# INTRODUCTION

1. Defendant Yellowstone Mountain Club is violating the Clean Water Act by discharging nitrogen pollution from a point source into the West Fork of the Gallatin River without a National Pollutant Discharge Elimination System ("NPDES") permit.

2. Defendant Spanish Peaks Mountain Resort is violating the Clean Water Act by discharging nitrogen pollution from a point source into the West Fork of the Gallatin River without an NPDES permit.

3. "'To establish a violation of the CWA, 'a plaintiff must prove that defendants (1) discharged, i.e., added (2) a pollutant (3) to navigable waters (4) from (5) a point source.'" *Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*, 945 F.3d 1076, 1083 (9th Cir. 2019) (citation omitted).

4. The Clean Water Act "forbids 'any addition' of any pollutant from 'any point source' to 'navigable waters' without" a NPDES permit. *Cty. of Maui, Hawaii v. Haw. Wildlife Fund*, 140 S. Ct. 1462, 1465 (2020) (citations omitted).

5. The CWA defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

6. Nitrates + Nitrites as Nitrogen and Total Nitrogen are pollutants that are regulated under the Clean Water Act.

7. "Point source" is defined as "any discernible, confined and

discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *Id.* § 1362(14).

8. Defendant Spanish Peaks Mountain Resort owns and operates a treated sewage holding pond that is not fenced. The sewage is sprayed on its golf course.

9. Humans and dogs unknowingly swim in the treated sewage holding pond.

10. 

11. The treated sewage holding pond and associated equipment at Spanish Peaks Mountain Resort are point sources.

12. The liner of the Spanish Peaks holding pond is ripped.

13. 

14. 

15. The treated sewage travels through the rips and tears in the holding pond liner and the rusted pipe, reaches the groundwater, and ultimately reaches the West Fork of the Gallatin River.

16. 

17.



18. The Spanish Peaks' golf course and related equipment, including but not limited to sprinklers and drains, are point sources.



19.

20. Defendant Spanish Peak Mountain Resort over-irrigates its golf course, which causes the treated sewage to leach through the grass, enter the groundwater, and travel in groundwater until it finds the West Fork.

21. The treated sewage also enters the groundwater and ultimately the West Fork through drains in the golf course.

22. There is a stream that travels through the Spanish Peaks golf course. Defendant's irrigation practices cause nitrogen pollution to be added to the stream and ultimately to be conveyed to the West Fork.

23. In 2020, a Ph.D scientist named Chris Allen prepared a "Technical Memorandum" entitled, "Upper Gallatin Nutrient Assessment & Reduction Plan."

24. The Technical Memorandum estimated over-irrigation of the Spanish Peaks golf course with treated sewage is responsible for 400 pounds of nitrogen entering the West Fork every year.

25. The memorandum assumed the Total Nitrogen as N concentration in the treated effluent used to irrigate the golf course was 17 mg/l.

26. The actual Total Nitrogen as N concentration in the treated effluent used to irrigate the Spanish Peaks golf course exceeds 17 mg/l.

27. Defendant Spanish Peaks Mountain Resort irrigates with treated sewage at times of the day and year when the grass is frozen, which causes nitrogen pollution to reach the West Fork.

28. Defendant Spanish Peaks Mountain Resort is adding Nitrates + Nitrites as Nitrogen and Total Nitrogen into the West Fork of the Gallatin River by over-irrigating its golf course with treated effluent, by spraying treated waste water into drains on the golf course, by irrigating when the grass is frozen, and by failing to maintain its treated sewage pond and related equipment.

29. The golf course and related equipment, including but not limited to sprinklers and drains, in addition to the wastewater holding pond and related equipment, are all point sources.

30. Defendant Yellowstone Mountain Club is adding Nitrates + Nitrites as

Nitrogen and Total Nitrogen into the West Fork of the Gallatin River by over-irrigating the golf course with treated effluent and by spraying the treated effluent into nearby woods and other areas.

31. The Yellowstone Mountain Club wastewater holding ponds, golf course and related equipment, including but not limited to sprinklers and drains, and the equipment used to discharge the treated effluent into the woods and other areas are all point sources.

32. The treated sewage holding pond conveys nitrogen pollution into a stream below it that discharges into the South Fork, West Fork of the Gallatin River.

33. The 2020 Technical Memorandum by Allen estimated over-irrigation of the Yellowstone Club golf course with treated sewage is responsible for 600 pounds of nitrogen entering the West Fork every year.

34. The memorandum assumed the Total Nitrogen as N concentration in the treated effluent used to irrigate the golf course was 17 mg/l.

35. The actual Total Nitrogen as N concentration in the treated effluent used to irrigate the Yellowstone Club golf course exceeds 17 mg/l.

36. The 2020 Technical Memorandum concluded that "[t]here is strong evidence that anthropogenic sources are negatively impacting stream water quality in the West Fork of the Gallatin River during base flow conditions."

37. The golf course, golf course equipment including but not limited to drains

and sprinklers, sewage holding ponds, and equipment used to spray treated sewage into the woods are Yellowstone Club point sources.

38. The point sources add nitrogen pollution to the stream below the holding pond as well as to the groundwater, which is hydrologically connected to the West Fork.

39. Defendant Yellowstone Club oversprays treated sewage on areas besides the golf course, including but not limited to National Forest land, which leaches into the groundwater or otherwise makes it way to the West Fork of the Gallatin River in violation of the Clean Water Act.

40. The West Fork of the Gallatin River is a water of the United States.

41. Nitrate + Nitrite as N and Total Nitrogen as N are pollutants that are regulated under the Clean Water Act.

42. Excess nitrogen causes algae blooms in rivers and streams.

43. Algae blooms harm aquatic ecosystems.

44. Defendants' unlawful discharges are causing significant long term harm to the water quality of the West Fork of the Gallatin River and the Gallatin River itself.

45. The West Fork and the Gallatin River below the West Fork have experienced significant algae blooms the last several years.

46. Defendants' continuous violations of the Clean Water Act harm Plaintiffs' aesthetic, recreational, conservation, and scientific interests in the Gallatin River and its tributaries, including the West Fork.

47. Section 303(d) of the Federal Clean Water Act, and Title 40 part 130 of the Code of Federal Regulations requires each state to develop a list of waters that do not meet water quality standards (i.e., which do not fully support their beneficial uses).

48. The MT Department of Environmental Quality placed the West Fork of the Gallatin River on the 303(d) list because of Nitrate + Nitrite as N and Total Nitrogen.

49. Defendants are either directly discharging Nitrate + Nitrite as N into the West Fork of the Gallatin River, or their discharges are the functional equivalent.

50. The unlawful discharge harms plaintiffs' members' aesthetic, recreational, conservation, and scientific interests in the water quality, aquatic species, and the health of the Gallatin River watershed, including the West Fork of the Gallatin River.

51. The unlawful discharge causes environmental harm to the West Fork of the Gallatin River, and the Gallatin River generally.

## JURISDICTION AND VENUE

52. This court has subject matter jurisdiction over the claims for violations of the CWA set forth in this Complaint pursuant to the CWA, 33 U.S.C. § 1365(a)(2). This cause of action arises under 33 U.S.C § 1365 (f)(1) as a violation of 33 U.S.C. § 1311(a).

53. Defendants are in violation of the CWA by discharging pollutants without a NPDES permit. The requested relief is proper under the CWA, 33 U.S.C 1365(a).

54. Venue in the United States District Court for the District of Montana is

proper under 33 U.S.C. § 1365 (c) because defendants are located in Big Sky, Montana, 59716, and are thus within this district.

55. As required by the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiffs provided Defendants with notice of its intent to sue more than sixty (60) days before filing this Complaint. Plaintiffs also notified the Administrator of the United States Environmental Protection Agency (EPA), and the Montana DEQ (MT DEQ) of its intent to sue.

## PARTIES

56. Plaintiff COTTONWOOD ENVIRONMENTAL LAW CENTER is a conservation organization dedicated to protecting the people, forests, water, and wildlife in the American West. Cottonwood members use the Gallatin River watershed for fishing, swimming, rafting, photography, guiding, and consumption.

57. Plaintiff GALLATIN WILDLIFE ASSOCIATION is an all volunteer conservation organization whose mission is to protect habitat and conserve fish and wildlife populations for our children and future generations. Gallatin Wildlife Association members use the Gallatin River watershed for fishing, swimming, rafting, photography, guiding, and consumption.

58. Plaintiffs use and enjoy the Gallatin River and its tributaries on a continuing and ongoing basis. Defendants' discharge of pollutants harms the Plaintiffs' aesthetic, recreational, conservation, and scientific interests. Members of the Plaintiff groups

have refrained from recreational activities on the Gallatin River after learning about Defendants' discharges.

59. Plaintiffs have devoted time, energy, and money to protecting water quality and fisheries, and monitoring the West Fork of the Gallatin River. Plaintiffs' members and supporters have suffered, and continue to suffer injury-in-fact on account of Defendants' CWA violations. The injury-in-fact is traceable to Defendants' conduct and would be redressed by the relief Plaintiffs seek.

60. Defendant Yellowstone Mountain Club, LLC is a 15,200-acre private residential, ski, and golf community located in the Big Sky area.

61. Defendant Spanish Peaks Mountain Resort is a residential, ski, and golf community located in the Big Sky area.

## LEGAL BACKGROUND

62. "Congress enacted the CWA in 1948 with the goal of *eliminating* the discharge of pollutants in order to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *N. Cheyenne Tribe v. Mont. Dept. of Envtl. Quality*, 2010 MT 302, ¶ 21, 356 Mont. 296, 302, 234 P.3d 51, 55 (2010) (emphasis in original) (citing 33 U.S.C. §1251(a)). "Congress developed the NPDES [National Pollution Discharge Elimination System] permit system to achieve this goal." *Id*; (citing 33 U.S.C. §§1342 and 1311).

63. The CWA requires a NPDES permit for each and every point source

discharge into a navigable waterway. 33 U.S.C. § 1342. "[T]he discharge of any pollutant by any person shall be unlawful" unless the discharge is made pursuant to and is authorized by a NPDES permit. 33 U.S.C. §§ 1311(a) and 1342(a). "The primary means for enforcing [water quality] limitations and standards is the NPDES [program]." *Arkansas v. Oklahoma*, 503 U.S. 91, 101-02 (1992).

64. The CWA defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

65. The CWA defines "point source" as a "discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well ... from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

66. The CWA broadly defines a "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

67. The CWA defines "person" as "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5).

68. The Environmental Protection Agency ("EPA") administers NPDES permits unless a state has enacted its own enforcement program, in which case EPA's Administrator ("Administrator") must have approved the state's program. 33 U.S.C. §

1342(a). Montana has elected to administer its own permit program – the MPDES program – which is under the control of the DEQ. Mont. Code Ann. §§ 75-5-402, 75-5-211; A.R.M. 17.30.101, 17.30.1201. Once delegated to a state, the state "stands in the shoes" of EPA, and states are obligated to implement all of the CWA's requirements for the NPDES program. *N. Cheyenne*, ¶ 37.

69. The citizen suit provision of the CWA authorizes "any citizen" to "commence a civil action on his own behalf" in federal district court against any person who is alleged to be in violation of "an effluent standard or limitation" of the Act. 33 U.S.C. § 1365(a).

## **CLAIM FOR RELIEF**

70. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

71. Defendants have violated and continue to violate section 301 of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants, including Nitrite + Nitrate as N and Total Nitrogen, into the West Fork of the Gallatin River from point sources, including those described above, without an NPDES permit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court grant the following relief:

A. Declare, hold, and adjudge that Defendants have violated and continue to violate the Clean Water Act by discharging pollutants to navigable waters without an NPDES permit.

B.      Enjoin Defendants from further discharging pollutants into the West Fork of the Gallatin and any other water of the United States except as expressly authorized by the CWA and the limitations and conditions of an applicable NPDES Permit.

C. Enjoin Defendant Yellowstone Mountain Club from accepting any new sewer connections at their wastewater treatment plant until the violations have been remedied.

D.      Order Defendant to pay civil penalties, monitoring, and remediation costs.

E.      Award Plaintiff its reasonable litigation costs and expenses, including attorney and expert fees, incurred in bringing this action.

F.      Award such other relief as the Court may deem just and proper.

DATED this 18th day of February, 2022.

Respectfully Submitted,

> /s/ John Meyer
> JOHN MEYER, MT Bar # 11206
> Cottonwood Environmental Law Center
> P.O. Box 412
> Bozeman, MT 59771
> (406) 546-0149
> john@cottonwoodlaw.org
>
> *Counsel for Plaintiffs*