IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> YELLOWSTONE MOUNTAIN CLUB LLC; SPANISH PEAKS MOUNTAIN RESORT, <br><br> Defendants. | CV-21-93-BU-BMM <br><br> **ORDER** |

## INTRODUCTION

Cottonwood Environmental Law Center ("Cottonwood") filed this Clean Water Act ("CWA") action to challenge the Spanish Peaks Mountain Club's ("Spanish Peaks") and Yellowstone Mountain Club's ("Yellowstone Club") alleged discharge of treated sewage water into the West Fork of the Gallatin River. Yellowstone Club filed a Motion to Dismiss for lack of jurisdiction and failure to state a claim. (Doc. 29.) Spanish Peaks filed a Motion to Sever the claims against it from the claims against Yellowstone Club. (Doc. 39.) Following a settlement conference, the parties have agreed to dismiss Spanish Peaks from this case. (Doc. 56); (Doc. 58.)

Accordingly, the parties have filed a Joint Motion to Dismiss Spanish Peaks as a Defendant. (Doc. 60.) Cottonwood has notified the Court that, pursuant to 40 C.F.R. § 135.5(b), the Court may not enter a judgment until 45 days after the Department of Justice and the Environmental Protection Agency receive copies of the consent judgment, in this case the Joint Motion to Dismiss Spanish Peaks as a Defendant. (Doc. 62); (Doc. 60.)

## BACKGROUND

Spanish Peaks and Yellowstone Club are private residential communities near Big Sky, Montana. Both consist of residences and clubhouses, and both operate golf courses. (Doc. 40 4-5.) Spanish Peaks and Yellowstone Club have separate water treatment infrastructure. Yellowstone Club operates a private wastewater treatment plant. (*Id.* at 5.) Big Sky County Water & Sewer District ("Big Sky District") collects and treats wastewater from Spanish Peaks. (*Id.*)

Both Spanish Peaks and Yellowstone Club use treated effluent from Big Sky District to irrigate their golf courses. Big Sky District entered into a single contract with Spanish Peaks and Yellowstone Club to deliver the two entities up to 160 million gallons of treated effluent annually. (Doc. 43-1 at 7.) It remains the responsibility of Yellowstone Club and Spanish Peaks to store and distribute the effluent on their properties. (*Id.*) Both Spanish Peaks and Yellowstone Club use lined holding ponds to store the treated effluent from Big Sky District. The Montana

Department Environmental Quality ("DEQ") regulates irrigation of the respective golf courses through separate Nutrient Management Plans. These plans specify the approved volumes of irrigation water and the corresponding nitrogen concentration that may be applied to the golf course each year.

Cottonwood claims that the Spanish Peaks holding pond liner has torn and that the pipes that discharge effluent to the pond are rusted and leaking. (Doc. 20 at 12-17.) Cottonwood provides some photographic evidence in support of these claims in its Amended Complaint. (*Id.*) Cottonwood also complains of CWA violations caused by over-irrigation on Spanish Peaks golf course. (*Id*. at 20.)

Cottonwood claims that Yellowstone Club has violated the CWA by over-irrigation on its golf course and by unspecified mechanisms related to Yellowstone Club's holding ponds or other infrastructure. (Doc. 20 at 30–32.)

## LEGAL STANDARD

*Failure to State a Claim*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint lacks sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### *Severance of Claims*

District courts possess broad discretion when evaluating whether to sever claims pursuant to Federal Rule of Civil Procedure 21. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000). Claims against different parties may be severed for trial or other proceedings if the court determines that the interests of justice would be better served by severance. *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 154 F. Supp.2d 10, 13 (D. D.C. 2001). Severance should be denied where a plaintiff alleges a common series of transactions and occurrences that raise common questions of law and fact applicable to all defendants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

### *CWA Citizen Suit Notice*

A CWA citizen suit plaintiff must notify a defendant and the relevant federal and state agencies of their intent to sue at least sixty days before filing suit. 33 U.S.C. § 1365(b)(1)(A). Notice regarding an alleged CWA violation shall include sufficient information to permit the recipient to identify the activity alleged to constitute a

violation. 40 CFR § 135.3(a). "In practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit." *Sw. Marine, Inc.*, 236 F.3d at 996 (quoting *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 819 (7th Cir. 1997)).

## ANALYSIS

Three major issues remain before the Court: 1) should the claims against Spanish Peaks and Yellowstone Club be severed; 2) did Cottonwood provide Yellowstone Club sufficient notice of its allegations; and 3) did Cottonwood plead its allegations against Yellowstone Club with sufficient particularity. (Docs. 29 and 39.) The Court determines that the claims must be severed. The Court also determines that Cottonwood failed to provide Yellowstone Club sufficient notice of an alleged Clean Water Act violation. Cottonwood's Complaint against Yellowstone Club must be dismissed. The Court does not reach the question whether Cottonwood's Complaint against Yellowstone Club pleads sufficient allegations.

**I. The Court will sever Cottonwood's claims against Yellowstone Club and Spanish Peaks.**

Spanish Peaks moves for the Court to sever the Claims against Spanish Peaks and Yellowstone Club. Under Federal Rule of Civil Procedure 20, a plaintiff may join multiple defendants in one action only if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of

the same transaction, occurrence, or series of transactions or occurrences;" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Cottonwood fails to meet the requirements for joinder and therefore the case must be severed.

Cottonwood argues that Spanish Peaks and Yellowstone Club are owned by the same company—CrossHarbor Capital Partners LLC ("CrossHarbor"). Cottonwood argues that it should be able to join Spanish Peaks and Yellowstone Club because it could have simply sued CrossHarbor. (Doc. 43 at 3.) Spanish Peaks contends that it does not, in fact, share any parent company with Yellowstone Club. Spanish Peaks' parent company is CH SP Acquisition LLC. (Doc. 44 at 2.) Spanish Peaks claims that CrossHarbor has no control over the operation of its golf course. (*Id*. at 4.)

The Court notes that there is at least some indication that CH SP Acquisitions is affiliated with CrossHarbor. For example, the agreement to dispose of wastewater on the Spanish Peaks and Yellowstone Club golf courses involves a joint agreement between both entities and Big Sky District. (Doc. 40 at 5.) Regardless, the Court is not persuaded by this argument. Cottonwood provides no support for its position that Spanish Peaks and Yellowstone Club could be joined for separate claims simply because the two share a parent company or affiliated parent companies, regardless of the veracity of that claim. Absent any supporting authority, the Court determines

that Cottonwood would have been required to join the shared parent company—if one exists—to pose a feasible argument.

Cottonwood also argues that the claims against Yellowstone Club and Spanish Peaks arise out of the same transaction or occurrence. (Doc. 43 at 4.) Cottonwood alleges Spanish Peaks and Yellowstone Club are violating the CWA in comparable ways—namely, each over-irrigates its golf course with reclaimed water from Big Sky District, thereby causing discharge of nitrogen to the West Fork. (*Id*. at 5.) This alleged similarity fails to demonstrate that the claims arise out of the same transaction or occurrence. The fact that both Spanish Peaks and Yellowstone receive irrigation water from Big Sky District represents Cottonwood's strongest argument supporting joinder. (Doc. 43 at 5.) The relevant inquiry under the CWA is not which entity generates the pollutant, but which entity controls the discharging point source mechanism. *See Friends of Outlet Creek v. Grist Creek Aggregates, LLC,* No. 16-cv-00431, 2018 U.S. Dist. LEXIS 225499, at *20 (N.D. Cal. Apr. 23, 2018). Spanish Peaks and Yellowstone Club share no infrastructure that could be considered a point source, share no discharge mechanism, and allegedly pollute different water bodies. The two entities share none of the components of a CWA claim, and so the claims do not arise from the same transaction or occurrence.

Given that the claims arise from distinct transactions or occurrences, the Court shall sever the claims against Spanish Peaks and Yellowstone Club per Federal Rule of Civil Procedure 21.

## II. Cottonwood failed to provide Yellowstone Club notice of the allegations in the Amended Complaint.

The CWA requires a plaintiff to provide a 60-day notice to the alleged CWA violator stating the plaintiff's intention to sue and sufficient information to allow the alleged violator to identify the activity that may constitute a violation. 40 C.F.R. § 135.3(a). Courts generally have taken a liberal interpretation of notice under the CWA. This Court previously has noted that "[p]roper notice need not perfectly describe the violation, but rather must adequately provide 'information that allow[s] the defendant to identify and address the alleged violations, considering defendant's superior access to information about its own activities.'" *Cottonwood Envt'l. Law Center v. Edwards*, 2021 WL 1102405 at \*4 (D. Mont. March 23, 2021) (quoting *Puget Soundkeeper Alliance v. Cruise Terminals of America*, 216 F. Supp. 3d 1198, 1210 n.7 (W.D. Wash. 2015); *Klamath Siskiyou Wildlands Center v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015)).

Yellowstone Club argues that the notice it received from Cottonwood did not sufficiently specify the violations Cottonwood now alleges in its Amended Complaint. (Doc. 30 at 7.) Cottonwood claimed in its notice letter that a small stream coming from the Yellowstone Club golf course acted as a point source discharging

8

nitrogen-contaminated waters into the South Fork of the West Fork of the Gallatin River ("South Fork"). (*Id.* at 6–7.) Cottonwood abandons that argument in the Amended Complaint. Cottonwood now argues that over-irrigation of Big Sky's treated effluent on Yellowstone Club's golf course causes the CWA violation. (Doc. 20 at 30.)

Yellowstone Club cites *ONRC Action v. Columbia Plywood, Inc.*, 286 F.3d 1137, 1143 (9th Cir. 2002), to support the dismissal of Cottonwood's claim. (Doc. 30 at 6.) *Columbia Plywood* involved a citizen suit in which the plaintiff notified the defendant of a forthcoming lawsuit citing a potential violation of the CWA, but then alleged novel violations in the complaint. *Id.* The Ninth Circuit dismissed the violations stated in the plaintiff's complaint because the plaintiff had not provided notice that would allow the violator to address the potential novel violations. *Id.* Cottonwood's Amended Complaint presents a similar issue. Cottonwood's Amended Complaint alleges that Yellowstone violates the CWA by over-irrigating its golf course with treated effluent water. (Doc. 20 at 30.) Cottonwood failed to assert over-irrigation of the golf course with treated effluent in its notice to Yellowstone Club.

The Court must dismiss Cottonwood's claim against Yellowstone Club for lack of proper notice. Cottonwood's notice provided only that a nitrogen-contaminated stream originated from Yellowstone Club's golf course. (Doc. 30-1 at

9

4–5) Cottonwood failed to state that the contamination originated from activities on the golf course and did not claim that irrigation using treated effluent caused the alleged nitrogen contamination. Cottonwood has failed to meet the CWA regulatory requirement for notice to provide the "activity alleged to constitute a violation." 40 C.F.R. § 135.3(a).

Having determined that Cottonwood failed to provide adequate notice, the Court shall not address whether Cottonwood's Amended Complaint contained sufficient particularity to satisfy pleading standards.

Accordingly, **IT IS ORDERED** that Yellowstone Club's Motion to Dismiss (Doc. 29) and Spanish Peak's Motion to Sever (Doc. 39.) are **GRANTED.**

Dated the 5th day of October, 2022.

_____
Brian Morris, Chief District Judge
United States District Court